# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CIVIL NO. 10-00623 JMS/KSC |
| | ) | |
| METROPOLITAN MORTGAGE & | ) | ORDER AFFIRMING |
| SECURITIES, CO., INC., AND | ) | BANKRUPTCY COURT'S AWARD |
| SUMMIT SECURITIES, INC., | ) | OF INTEREST |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| SUMMIT CREDITORS' TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAWAII FOREST PRESERVATION, | ) | |
| LLC; ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| FINANCE FACTORS, LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUMMIT CREDITORS' TRUST; ET | ) | |
| AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF INTEREST

## I.  INTRODUCTION

Pursuant to 28 U.S.C. § 158(a), GBBY Ewa Limited Partnership ("GBBY") appeals the United States Bankruptcy Court for the District of Hawaii's award of interest at a default rate of twenty-four percent in favor of Finance Factors, Limited ("Finance Factors") as set forth in the Bankruptcy Court's (1) February 10, 2010 Findings of Fact, Conclusions of Law, and Order [regarding Interlocutory Decree of Foreclosure] ("Foreclosure Decree") and the corresponding Foreclosure Judgment; (2) August 3, 2010 Order Granting in Part Finance Factors's Motion for Confirmation of Sales ("Confirmation Order"), and (3) corresponding September 27, 2010 Memorandum of Decision on Post Judgment Interest.  The Memorandum of Decision denied GBBY's Motion for Reconsideration of the Confirmation Order regarding the nature and rate of interest awarded to Finance Factors.

GBBY contends that the Foreclosure Decree or the corresponding Foreclosure Judgment in favor of Finance Factors is a "money judgment" under 28 U.S.C. § 1961 such that interest after February 10, 2010 should have accrued at the much lower federal statutory rate rather than the twenty-four percent default rate. As a junior lien holder, GBBY has an understandable interest -- it could be entitled

to excess funds that would remain after the debtors' obligations to Finance Factors are satisfied.

For the reasons set forth, the decision of the Bankruptcy Court is AFFIRMED.

## II. BACKGROUND

### A. Factual Background

#### 1. *The Foreclosure Decree and Foreclosure Judgment*

This proceeding arose from a mortgage foreclosure action filed in state court involving multiple lenders and properties. GBBY's Excerpts of Bankr. Ct. R. ("ER") at 92 [Doc. No. 7-2]. The Bankruptcy Court assumed jurisdiction upon the bankruptcy of an unspecified party (*see* Answering Br. of Finance Factors, at 2 n.1.), and proceeded to adjudicate the foreclosure proceedings.

The Foreclosure Decree found that Finance Factors was owed $5,247,231.66 (as of July 24, 2009), consisting of (1) $4,484,913.08 in principal, (2) $34,087.72 in pre-default interest due prior to April 1, 2009, (3) $360,280.88 in default interest at a contractual rate of twenty-four percent, and (4) $3,950 in loan fees. ER 12, ¶ 38 [Doc. No. 7-1]. It also found Finance Factors was entitled to further interest (also at the default rate of twenty-four percent) and late charges, attorneys' fees, and costs. *Id.*

The Foreclosure Decree concluded that Finance Factors had valid first mortgages as senior mortgagee on "Forest Preservation Properties" and "Kauilani Ewa Properties" ("the Mortgaged Properties"). *Id.* at 13, ¶ 2. As to GBBY, it concluded that GBBY was a junior mortgagee as to the Kauilani Ewa Properties. *Id.* ¶ 4.

Finance Factors was thus entitled to foreclose on the Forest Preservation and Kauilani Ewa Properties and have them "sold in the manner provided by law, and have the sale proceeds applied to the amounts owed to Finance Factors on the Notes and Mortgages." *Id.* ¶ 5. Similarly, the Foreclosure Decree concluded that GBBY was entitled to have its mortgage on the Kauilani Ewa Properties foreclosed, to have those properties sold and to have the sales proceeds "disbursed to Finance Factors and GBBY in accordance with the Term Sheet (April 7, 2006)." *Id.* ¶ 6.

The Foreclosure Decree directed how the sale would proceed, as follows:

> GBBY and [Defendant Summit Creditors' Trust's] claims for marshaling of collateral will be decided at the confirmation of sale hearings and the burden is on the parties advocating marshaling. The Commissioner appointed herein shall sell the Mortgaged Properties in the order agreed upon by the parties. If the parties cannot agree upon the order . . . the Commissioner . . . shall decide when and how the Mortgaged Properties are sold.

*Id.* ¶ 7.

> It provided for certain fees:
>
> > Finance Factors is entitled to recover all loan and
> > extension fees under the Notes and Finance Factors'
> > recovery shall not be affected in any way by any
> > collateral released by Finance Factors as Finance Factors
> > owed no duty to any other party to maximize its recovery
> > from properties in which other parties have no interest in.

*Id.* ¶ 9. It also awarded interest:

> > Finance Factors is entitled to recovery interest at the
> > default interest rate of 24% per annum [in the applicable
> > promissory notes] because it is legal under Hawaii law,
> > was provided for under the loan documents, and because
> > there was no contractual restriction against charging such
> > amount.

*Id.* ¶ 11. And it provided for a possible deficiency judgment:

> > Finance Factors is entitled to a deficiency judgment
> > against Defendants . . . for the difference between the
> > amount owed to Finance Factors on the Notes and the
> > Mortgages, and proceeds of the sale of the Mortgaged
> > Properties applied thereto.

*Id.* ¶ 12.

The Foreclosure Decree also appointed a Commissioner, who was

empowered to (1) take possession, manage, preserve, and dispose of the Mortgaged

Properties, (2) demand and collect rents due and owing from any tenant of the

Mortgaged Properties, (3) sell the Mortgaged Properties according to a set

procedure, subject to confirmation by the Bankruptcy Court, (4) file reports with
the Bankruptcy Court after each sale, (5) execute and deliver documents
transferring title after confirmation of sale, and (6) disburse sale and rent
proceedings according to further orders of the Bankruptcy Court. *Id.* at 18-19.  It
allowed any party to bid for the Mortgaged Properties at the public auction, and
provided that reopening of the auction would also occur at the confirmation-of-sale
hearing.  It then directed entry of a partial judgment under Rule 54(b) of the
Federal Rules of Civil Procedure and Rule 7054 of the Federal Rules of
Bankruptcy Procedure.  *Id.* at 19-20.

The corresponding Foreclosure Judgment, entered separately,
provided in pertinent part:

> Pursuant to the [Foreclosure Decree] . . . Judgment is
> hereby entered in favor of Plaintiff Finance Factors,
> Limited and against all Defendants on the foreclosure of
> the mortgaged properties . . . [and] on Plaintiff Finance
> Factors, Limited's Amended Complaint, granting
> foreclosure of the (1) First Mortgage With Assignment of
> Rents, . . . (2) Third Mortgage With Assignment of Rents
> . . . , and (3) Mortgage With Assignment of Rents . . . all
> as ordered by this Court.

*Id.* at 23-24.

### 2. *The Confirmation of Sales, and Objections to the Rate of Interest*

The Mortgaged Properties were sold for $2,500,000 (Kauilani Ewa

Properties) and $4,500,000 (Forest Preservation Properties), and confirmation proceedings followed. *Id.* at 44. Prior to the confirmation hearing, Defendant Lowell C.E. Ing (who did not appeal) objected, arguing that the Bankruptcy Court improperly awarded default interest at twenty-four percent on the Foreclosure Decree. *Id.* at 28. He contended that the proper rate should have been awarded as post-judgment interest under Hawaii Revised Statutes ("HRS") § 478-3. *Id.* Another Defendant, Beverly Ing (who also did not appeal), made a similar objection, arguing that the twenty-four percent default rate on the notes "terminates with the entry of judgment, which occurred on February 10, 2010." *Id.* at 32. GBBY joined Lowell Ing's Opposition, although GBBY contended that if a post-judgment statute applied, it would be the federal statute -- 28 U.S.C. § 1961 -- not the state statute. *Id.* at 35-36.

On August 3, 2010, the Bankruptcy Court confirmed the sales. *Id.* at 39. It found the $2,500,000 and $4,500,000 sales prices to be fair and equitable. It also (1) awarded the Commissioner fees and expenses of $32,435.03, (2) deferred Finance Factors' request for attorneys' fees and costs, (3) deferred addressing whether a deficiency judgment was necessary because of an open issue regarding another property (the "Lanikai Lot"), and (4) found that Finance Factors continued to be entitled to recover interest at the default rate of twenty-four percent per

annum "until the entry of a deficiency judgment or payment in full, whichever first occurs." *Id.* at 44-45. After the sales closed, the Bankruptcy Court ordered the Commissioner to pay to Finance Factors proceeds "up to the amount of its indebtedness, $6,356,182.04, plus per diem interest of $3,188.33 per day after July 2, 2010." *Id.* at 48-49. This was an updated amount of indebtedness from the $5,247,231.66 (as of July 24, 2009) in the Foreclosure Decree. A separate judgment was entered under Rule 54(b) on August 3, 2010. *Id.* at 56-57.

GBBY moved for reconsideration on August 5, 2010, again arguing that the proper interest rate was the federal post-judgment interest rate under § 1961, and should have been calculated from February 10, 2010 (the date of the Foreclosure Decree and Judgment). *Id.* at 60-69 [Doc. No. 7-2]. On September 27, 2010, the Bankruptcy Court issued its Memorandum of Decision, denying GBBY's Motion for Reconsideration. *Id.* at 81-87.

## B. Procedural Background

Under 28 U.S.C. § 158(a), GBBY timely appealed the Bankruptcy Court's denial of reconsideration. *Id*. at 89-92. GBBY's Opening Brief was filed on December 17, 2010. Finance Factors filed an Answering Brief on January 4, 2011, and GBBY's corresponding Reply was filed on January 21, 2011. The matter was heard on February 7, 2011.

### III.  STANDARD OF REVIEW

The court reviews a bankruptcy court's conclusions of law *de novo* and its factual findings for clear error.  *Konop v. Hawaiian Airlines, Inc.*, 411 B.R. 678, 682 (D. Haw. 2009) (citations omitted).  "The bankruptcy court's findings of fact must be accepted unless the district court is left with the definite and firm conviction that a mistake has been committed.  *Id.*  The court reviews a bankruptcy court's decision denying a motion for reconsideration for abuse of discretion.  *In re O'Kelley*, 420 B.R. 18, 22 (D. Haw. 2009).  An award of pre- and post-judgment interest is reviewed *de novo* when it involves statutory interpretation of 28 U.S.C. § 1961.  *See Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996).

### IV.  DISCUSSION

GBBY challenges the Bankruptcy Court's decisions refusing to apply federal statutory post-judgment interest on the February 10, 2010 Foreclosure Decree and Judgment, and instead applying the contractual "default" rate (as prejudgment interest) until entry of a deficiency judgment or payment in full.

Where a claim in bankruptcy court "arose under state law, the award of prejudgment interest . . . is also governed by state law."  *In re Niles*, 106 F.3d 1456, 1463 (9th Cir. 1997) (internal citation omitted); *see also Northrop Corp. v.*

*Triad Intern. Mktg., S.A.*, 842 F.2d 1154, 1155-56 (9th Cir. 1988).  But "an award

of *post*-judgment interest is procedural in nature and thereby dictated by federal

law."  *In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002) (emphasis added).

The appeal thus turns on the nature of the February 10, 2010 Foreclosure Decree

and corresponding Foreclosure Judgment.

## A.    The Foreclosure Judgment Is Not a "Money Judgment"

The federal post-judgment interest rate is governed by 28 U.S.C.

§ 1961(a), which provides in relevant part:

> Interest shall be allowed on *any money judgment* in a
> civil case recovered in a district court.  Execution
> therefor may be levied by the marshal, in any case where,
> by the law of the State in which such court is held,
> execution may be levied for interest on judgments
> recovered in the courts of the State.  Such interest shall
> be calculated from the date of the entry of the judgment,
> at a rate equal to the weekly average 1-year constant
> maturity Treasury yield, as published by the Board of
> Governors of the Federal Reserve System, for the
> calendar week preceding [] the date of the judgment.
> (Emphasis added.)

GBBY contends that the February 10, 2010 Foreclosure Judgment

(incorporating the Foreclosure Decree) is a "money judgment" under § 1961(a),

such that the applicable statutory interest rate (0.35 percent as of February 2010)[1]

_____

[1] Archives of applicable rates are available at:  http://www.federalreserve.gov/releases/
H15/data/Monthly/H15_TCMNOM_Y1.txt (last visited, March 14, 2011).

applied after that date -- rather than the "default" contractual rate of twenty-four percent set forth in the applicable promissory notes.  Given the disparity in rates, the answer is significant; as a junior lienholder, GBBY could be entitled to substantial funds that otherwise were awarded to senior lienholder Finance Factors.

GBBY relies on Ninth Circuit and Supreme Court case law concluding that, under § 1961(a), "[p]ost-judgment interest must run from the date of a judgment when the damages were 'supported by the evidence' and meaningfully 'ascertained.'"  *Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 518 F.3d 1013, 1017-18 (9th Cir. 2008) (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990)) (other citations omitted).  GBBY contends the Foreclosure Judgment is a "money judgment" because it "meaningfully ascertained" the amount of Finance Factors' damages.  Under GBBY's view, even if the exact amounts were not yet available, all that remained was a mechanical calculation -- computing a sum after (1) selling the subject properties and confirming the sale, (2) adding further interest, and (3) computing attorneys fees and costs.  GBBY Opening Br., at 8.[2]

But, as the Bankruptcy Court recognized,[3] the matter becomes

---

[2] GBBY does not mention the Commissioner's fees and costs.

[3] *In re Metro. Mortg. & Sec., Co.*, 2010 WL 3842468, at *1 (Bkrtcy. D. Haw. Sept. 27, (continued...)

11

difficult because "state law serves as the law of decision in foreclosure actions,"
*United States v. Johnston*, 2009 WL 667187, at *2 (D. Haw. Mar. 16, 2009)
(citation omitted), and under Hawaii law judicial foreclosure proceedings consist
of two final and appealable judgments. In bankruptcy matters, "Congress has
generally left the determination of property rights in the assets of a bankrupt's
estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979). "[T]he States
have created diverse networks of judicially and legislatively crafted rules
governing the foreclosure process, to achieve what each of them considers the
proper balance between the needs of lenders and borrowers." *BFP v. Resolution
Tr. Corp.*, 511 U.S. 531, 541-42 (1994). Foreclosure law involves "an essential
state interest . . . 'the security of the titles to real estate' and the power to ensure
that security 'inheres in the very nature of state government.'" *Id.* at 544 (quoting
*Am. Land Co. v. Zeiss*, 219 U.S. 47, 60 (1911)).

   The court thus looks to Hawaii law in examining the nature of the
Foreclosure Decree. In Hawaii, the foreclosure process is bifurcated. *See, e.g.*,
*City Bank v. Abad*, 106 Haw. 406, 412-13, 105 P.3d 1212, 1218-19 (Haw. App.
2005) ("[F]oreclosure cases are bifurcated into two separately appealable parts:
(1) the decree of foreclosure and the order of sale, if the order of sale is

_____

[3](...continued)
2010).

12

incorporated within the decree; and (2) all other orders.") (quoting *Sec. Pac. Mortg. Corp. v. Miller*, 71 Haw. 65, 70, 783 P.2d 855, 857 (1989)) (other citation omitted).

The first step is a decree of foreclosure. A court enters a foreclosure decree where four material facts are established: "(1) the existence of the [loan] Agreement, (2) the terms of the Agreement, (3) default by [the mortgagor] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect." *IndyMac Bank v. Miguel*, 117 Haw. 506, 520, 184 P.3d 821, 835 (Haw. App. 2008) (quoting *Bank of Honolulu, N.A. v. Anderson*, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982)). A foreclosure decree usually orders sale of the property and "contains a direction to [a] commissioner[ ] to make a report of sale and to bring the proceeds into court for an order regarding their disposition." *Id.* (quoting *Int'l Sav. & Loan Ass'n, v. Woods*, 69 Haw. 11, 17, 731 P.2d 151, 155 (1987)). This stage requires proof of default, although "it is not necessary to determine a sum certain before foreclosure is decreed[.]" *Id.* (quoting *Bank of Honolulu*, 3 Haw. App. at 549, 654 P.2d at 1374).

The second part, "all other orders," includes the order confirming the sale and a deficiency judgment if the proceeds do not cover the debt. *See, e.g.*, *Beneficial Hawaii, Inc. v. Casey*, 98 Haw. 159, 165, 45 P.3d 359, 365 (2002);

*Hoge v. Kane*, 4 Haw. App. 246, 247, 663 P.2d 645, 646-47 (1983) ("In foreclosure cases which result in a deficiency, the last and final order which starts the clock running is usually the deficiency judgment.").[4]

Hawaii courts do not consider the first part of the foreclosure process -- the foreclosure decree and judgment -- to be a "money judgment" for purposes of post-judgment interest, at least for purposes of interest under Hawaii's equivalent of § 1961(a) -- the current HRS § 478-3.[5] *See Kamaole Resort Twenty-One v. Ficke Hawaiian Inv., Inc.*, 60 Haw. 413, 420, 591 P.2d 104, 109 (1979). In *Kamaole Resort*, the Hawaii Supreme Court analyzed a November 1, 1974 foreclosure decree that (1) determined the existence of a valid promissory note with a principal of $2,800,000 secured by a mortgage, (2) found amounts due such that "the entire amount of the indebtedness" was "now due and payable," (3) ordered the property to be sold by commissioners, but (4) reserved the question of "the exact amount (including interest) of the indebtedness secured by the liens

---

[4] Both parts -- a judgment entered on the foreclosure decree, and the subsequent order confirming sale and deficiency judgment -- are final and appealable (whether or not they are "money judgments"). *See* HRS § 667-51. Whether a judgment is appealable, however, does not determine whether it is a "money judgment" or whether post-judgment interest should accrue.

[5] HRS § 478-3 provides:

> Interest at the rate of ten per cent a year, and no more, shall be allowed *on any judgment* recovered before any court in the State, in any civil suit. (Emphasis added.)

14

held by the respective parties." *Id.* at 418, 591 P.2d at 108.  Such a judgment "was not a money judgment to which HRS § 478-2 [now § 478-3] was applicable." *Id.* at 420, 591 P.2d at 109.

The Hawaii Supreme Court reasoned that the November 1, 1974 foreclosure decree did not order payment of money.  "[A] judgment which requires the performance of an act other than a payment of money or its equivalent could not form a basis for the computation of interest and that statutory interest could not accrue on such a judgment pursuant to HRS § [478-3]." *Id.* at 419, 591 P.2d at 108.  Rather,

> At the most, the [foreclosure] decree set in motion a sequence of events which could be expected to result in a subsequent court order for the payment of money to the first mortgagee.  However . . . the right of the first mortgagee to receive a money payment is adjudicated only to the extent of directing the sale of the mortgaged property to create a fund for distribution pursuant to a future court order.

*Id.* at 420, 591 P.2d at 109.  The Court contrasted such a foreclosure decree with the deficiency judgment that might follow, which would provide a remedy of a writ of execution, and reasoned that "an execution may issue upon a decree in a mortgage foreclosure action *for a deficiency* remaining after exhaustion of the security." *Id.* (emphasis added).  It likewise viewed the November 1, 1974 decree as "not a decree for a deficiency" where "payment of money was not ordered and

15

no amount of money was found to be due[.]" *Id.* That is, a foreclosure judgment is not executable; it is not until a deficiency judgment is entered after a mortgaged property is sold that a writ of execution becomes possible. *See FDIC v. Senkovich*, 806 F. Supp. 245, 250-51 (M.D. Fla. 1992) ("The foreclosure order did not result in an entry of a money judgment upon which execution could be had.").

As for the rate of interest, *Kamaole Resort* concluded that:

> [T]he decree of November 1, 1974, was not a money judgment to which HRS 478-[3] was applicable. The default rate of interest under the note continued in effect from the date of default in the payment of principal until entry of the supplemental decree of October 28, 1975, which terminated the period with which we are concerned in this appeal[.]

60 Haw. at 420, 591 P.2d at 109.

The distinction between a general foreclosure decree and an executable deficiency judgment is consistent with a generalized definition of "money judgment." *See Black's Law Dictionary* 920 (9th ed. 2009) (defining "money judgment" as a "judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief"); 59A C.J.S. *Mortgages* § 1046 ("A foreclosure decree is distinguished from a money judgment or decree in that a foreclosure decree provides that the property described in the decree be sold to satisfy the debt"). Indeed, § 1961 itself refers to the executable nature of a "money

16

judgment" when it provides that "[e]xecution therefor may be levied by the marshal, in any case where, by the laws of the State in which such court is held, execution may be levied for interest on judgment recovered in the courts of the State." *See also* Fed. R. Civ. P. 69(a) ("A money judgment is enforced by a writ of execution[.]").

The court recognizes that "money judgment" under § 1961(a) is not defined by state law -- that is, the court is applying a federal statute and federal interpretations of the phrase "money judgment." GBBY thus emphasizes the Ninth Circuit's direction as to when post-judgment interest under § 1961 begins to accrue -- "when the damages were 'supported by the evidence' and meaningfully 'ascertained.'" *Planned Parenthood of the Columbia/Willamette*, 518 F.3d at 1018 (quoting *Kaiser*, 494 U.S. at 835-36); *see also Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1080 (9th Cir. 2009) (reiterating that post-judgment "interest ordinarily should be computed from the date of the original judgment's initial entry when the evidentiary and legal bases for an award were sound"). For example, if a "money judgment" awards attorneys' fees, "[i]nterest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set."

*Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995) (citations omitted).[6]
But the court cannot apply the federal interpretation of "money judgment" in a
vacuum -- Hawaii law determines the nature of a Hawaii foreclosure decree, the
action giving rise to a judgment. "[T]he requirements of [Hawaii] foreclosure law
[must be] complied with[,]" *BFP*, 511 U.S. at 545, because "foreclosure sales
touch on traditional state interests." *In re Bledsoe*, 569 F.3d 1106, 1112 (9th Cir.
2009).

It should make no difference, as a substantive matter, whether a
federal court (whether bankruptcy or district) or a state court conducts the
foreclosure proceeding. Indeed, although this foreclosure was adjudicated in the
Bankruptcy Court, it was originally filed in state court. This court must treat the
Foreclosure Decree the same as would Hawaii state courts.[7] The court is guided by
the following rationale as explained by the United States Supreme Court when

---

[6] Notably, these cases did not actually define "money judgment" for purposes of
§ 1961(a). Rather, they addressed the starting point for computation of interest where there was
no dispute about the nature of the judgment. They do tend to support GBBY, at least to the
extent the cases indicate that statutory interest can still apply to a judgment that does not provide
"the exact quantity" in a judgment. *Friend v. Kolodzieczak*, 72 F.3d 1386, 1392 (9th Cir. 1995).
The *nature* of the judgment, however, is a different question.

[7] If a statutory post-judgment interest rate applies to a particular "money judgment," the
statutory *rates* might differ as a matter of procedure. *Compare* 28 U.S.C. § 1961 (providing an
interest rate based upon "weekly average 1-year constant maturity Treasury yield"), *with* HRS
§ 478-3 (statutory rate of ten percent). But the *treatment* of the judgment should be the same in
either court.

determining that certain federal bankruptcy laws do not preempt state law:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, *and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.*

*Butner*, 440 U.S. at 55 (citations and internal quotations omitted) (emphasis added).

Accordingly, this court follows *Kamaole Resort*. Because Hawaii courts would not construe the Foreclosure Decree as a "judgment" for purposes of post-judgment interest under HRS § 478-3, this court will not construe it as a "money judgment" for purposes of post-judgment interest under § 1961. The Bankruptcy Court correctly determined the Foreclosure Decree was not a money judgment. To do otherwise, Finance Factors would suffer (or GBBY would receive a windfall) "merely by reason of the happenstance of bankruptcy." *Butner*, 440 U.S. at 55. Moreover, this approach is consistent with recent practice in this court. *See United States v. Guerette*, 2010 WL 3260191, at *10 (D. Haw. Aug. 13, 2010) (Kay, J.) (deferring the amount of interest owed until the deficiency judgment stage, in a foreclosure decree that also determined the principal amount

due and owing on the Note and Mortgage, citing *Kamaole Resort*).

**B.     The Foreclosure Decree Is Not a "Money Judgment" under *Kamaole Resort***

          Even under *Kamaole Resort*, however, GBBY contends that the

Foreclosure Decree is a "money judgment" because it adjudicated the amounts

owing on the notes -- unlike in *Kamaole Resort* where the amounts were reserved.

*See Kamaole Resort*, 60 Haw. at 418, 591 P.2d at 108.  GBBY is not necessarily

arguing that all foreclosure decrees are "money judgments," just that this particular

decree qualifies because it contains enough detail to calculate the amounts owing.

Specifically, the Foreclosure Decree found that Finance Factors was owed

$5,247,231.66 (as of July 24, 2009), and was also entitled to further interest (also

at the default rate of twenty-four percent), as well as late charges, attorneys' fees,

and other costs.  ER at 12, ¶ 38 [Doc. No. 7-1].  According to GBBY, all that is left

is a ministerial calculation; the Foreclosure Decree was specific and provided set

amounts (or set methodologies) that were "'supported by the evidence' and

meaningfully 'ascertained'" for purposes of § 1961(a).  *Planned Parenthood of the*

*Columbia/Willamette*, 518 F.3d at 1018.

          The court disagrees.  Although amounts owing as of a certain date

were calculated, and a formula was provided for further amounts, much was left to

do under the Foreclosure Decree.  The Commissioner needed to sell the properties,

the sales needed to be confirmed, and additional attorney and Commissioner fees and interest were being incurred. The money "damages" were not known, and could not be "ascertained in a meaningful way" until after (1) the sales amounts were known and the sales closed and (2) the corresponding proceeds were finalized, after payment of property taxes, and calculation and approval of commissioner's and attorneys' fees and costs. Further, neither the Foreclosure Decree nor the Foreclosure Judgment ordered payment of money. The Foreclosure Judgment was not executable. There was no deficiency. A "judgment" determining an *amount* of money (and a methodology for future calculations and payment of money) is not a judgment for *payment* of money. Under *Kamaole Resort*, the Foreclosure Decree did not have the characteristics of a "money judgment" for purposes of imposition of statutory interest.

GBBY argues that *Harada v. Ellis*, 60 Haw. 467, 591 P.2d 1060 (1979), supports the proposition that a sufficiently-specific foreclosure decree can constitute a "money judgment" for which a statutory (not contractual) interest rate could apply. *Harada*, however, did not address the issue now before this court. Among many other issues, *Harada* examined

> [a]n order entitled Judgment, Decree of Foreclosure and Order of Sale . . . [on] March 24, 1966, in which it was ordered that final judgment be entered in favor of the plaintiff mortgagees against the defendant mortgagors in

> the principal amount of $44,000 with [contractual] interest at 5 1/2% [p]er year from November 20, 1962; that the mortgage be foreclosed and the property be sold at public auction by commissioners therein appointed; that the amounts and priority of tax liens be determined upon confirmation of the sale; and that the amounts and priority of further interest, costs, attorneys' fees and other charges be determined upon confirmation of the sale. On the same date, judgment was entered in favor of the mortgagees against the mortgagors in the sum of $52,066.

*Id.* at 469, 591 P.2d at 1064. After the property was sold, an order confirming the sale was entered on January 10, 1973 where:

> the commissioners were directed to pay to plaintiffs out of the sale proceeds the sum of $73,249.02, being the amount of the judgment entered March 24, 1966 ($52,066.00) and [*statutory* (HRS § 478-2)] interest thereon at 6% [t]o January 3, 1973 ($21,183.02), and to plaintiffs' attorneys for attorneys' fees and costs the sum of $19,140.58, or a total sum of $92,389.60.

*Id.* That is, the confirmation of sale order did indeed award (on the March 24, 1966 foreclosure decree) statutory interest of six percent -- not the contractual rate of five and one-half percent applied prior to the decree. *Harada* further explains:

> By order entered July 11, 1975 the circuit court awarded interest to plaintiffs at the rate of 6% [p]er year on the sum of $52,066.00 from January 1, 1973 until payment of the foregoing sums pursuant to the order of January 10, 1973. Payments of these sums were made by the commissioners on March 21 and 31, 1975.

*Id.*

*Harada* "conclude[d] that there was no error in the circuit court's refusal to award interest as claimed by plaintiffs." *Id.* at 472, 591 P.2d at 1066. GBBY therefore argues that the Hawaii Supreme Court has allowed statutory post-judgment interest to run on a foreclosure decree that -- similar to the February 10, 2010 Foreclosure Decree -- "expressly adjudicated in personam liability by determining the amount of indebtedness[.]" GBBY Reply Br. at 14.

But *Harada* never addressed the appropriateness of applying the default rate versus the statutory rate after the March 24, 1966 foreclosure decree. Instead, the issue on appeal in *Harada* was this: "Plaintiffs contend that they should have been awarded interest at the statutory rate of 6% [p]er year for this period [(from January 1, 1973 until March 21 and 31, 1975)] on the sum of $92,389.60 rather than $52,066." *Harada*, 60 Haw. at 470, 591 P.2d at 1064. Again, *Harada* did not address -- because it was not challenged -- whether it was proper to apply a statutory (six percent) or contractual (five and one-half percent) rate to the amounts in the foreclosure decree.[8] And so, *Harada* provides no support for GBBY. Indeed, *Harada* also reiterated the principles from *Kamaole*

--------

[8] Unlike in the present case, in *Harada v. Ellis*, 60 Haw. 467, 591 P.2d 1060 (1979), the interest rates were reversed: The statutory rate was slightly *higher* than the contractual rate, rather than the significant disparity at issue here (where the contractual rate is much higher than the statutory rate). And the fact that neither party challenged the appropriate interest rate is hardly surprising where the marginal difference between the two rates was only one-half percent.

*Resort* that "a mortgage foreclosure decree . . . was not a judgment within the meaning of [HRS § 478-2]," and that "interest under a statute such as HRS § 478-2 is predicated upon an in personam liability for a determined amount."[9] *Id.* at 472, 591 P.2d at 1065. Thus, the court still concludes that statutory interest does not apply to the Foreclosure Decree.

## C. A Merger Doctrine Does Not Preclude Application of a Contractual Default Interest Rate

Finally, GBBY argues that the promissory notes and mortgages merged into the Foreclosure Decree. Under a doctrine of merger applied in some jurisdictions the promissory note (and the default interest rates contained within it) merge into a foreclosure judgment and no longer exists. *See, e.g.*, *In re Stendardo*, 991 F.2d 1089, 1095 (3d Cir. 1993) ("The doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties.") (applying Pennsylvania law). Under this theory, Finance Factors' twenty-four percent contractual rate of interest would have necessarily stopped accruing on February 10, 2010, and at that point statutory interest would apply. Even if not a "money judgment," under HRS § 478-3, the interest rate on the

---

[9] *Harada*, decided two days after *Kamaole Resort* and authored by the same Justice, clearly did not intend to overturn or question the correctness of *Kamaole Resort*.

Foreclosure Decree would be ten percent.  Thus, GBBY argues in the alternative that a ten percent rate -- not the contractual default rate of twenty-four percent -- should apply from February 10, 2010.

Among jurisdictions that apply the law of merger in this mortgage foreclosure context, however, the application is far from uniform.  Some jurisdictions apply it to implement a statutory interest rate at time of the foreclosure *decree*.  *E.g.*, *In re McKillips*, 81 B.R. 454, 457 (Bankr. N.D. Ill. 1987). Some apply it only after a foreclosure *sale*.  *E.g.*, *In re Sun 'n Fun Waterpark LLC*, 408 B.R. 361, 369 (B.A.P. 10th Cir. 2009) ("'A mortgage lien on real estate *is not merged* into a decree of foreclosure' . . . .  The mortgage lien is extinguished 'only by a sale.'") (quoting *Bank of the Panhandle v. Hill*, 965 P.2d 413, 416 (Okla. Civ. App. 1998) (emphasis in original)).  Some apply *state* statutory interest.  *See In re McKillips*, 81 B.R. at 457.  Some apply *federal* statutory interest.  *See In re Daniels*, 102 B.R. 680, 683 (N.D. Ill. 1989).  And some also recognize that a mortgage does not automatically merge with a judgment, but rather a mortgage's terms survive if the parties intended terms to survive.  *See Stendardo*, 991 F.2d at 1095.

Ultimately, however, this court must apply Hawaii law.  And the court has found no binding Hawaii authority applying a merger doctrine in any

foreclosure context, much less in a context that would preclude continued

application of a bargained-for default rate of interest.[10]  More importantly, applying

a merger theory to preclude contractual interest after a foreclosure decree would

conflict with *Kamaole Resort*.  As detailed earlier, in *Kamaole Resort*, the Hawaii

Supreme Court addressed whether a default rate of interest could apply to a

foreclosure decree.  It held that "the [foreclosure] decree of November 1, 1974 was

not a money judgment to which HRS § 478-2 was applicable."  60 Haw. at 109,

591 P.2d at 420.  "The default rate of interest under the note continued in effect

from the date of default in the payment of principal until entry of the supplemental

---

[10] GBBY points to *Realty Finance, Inc. v. Schmidt*, 2004 WL 541878, at *6 (Haw. Mar. 18, 2004) (mem.), an unpublished and noncitable memorandum opinion from the Hawaii Supreme Court, for the proposition that merger applies in a mortgage foreclosure context under Hawaii law.  This court, however, cannot rely on *Realty Finance* -- even as some indication of how Hawaii courts might approach the question.  Hawaii Rule of Appellate Procedure ("HRAP") 35(c)(1) provides:

> DISPOSITIONS BEFORE JULY 1, 2008.  A memorandum opinion or
> unpublished dispositional order filed before July 1, 2008 *shall not
> be cited in any other action or proceeding* except when the
> memorandum opinion or unpublished dispositional order
> (i) establishes the law of the pending case, or (ii) has res judicata
> or collateral estoppel effect, or (iii) in a criminal action or
> proceeding, involves the same respondent.  (Italics added.)

The language in HRAP 35(c)(1) is unambiguous.  *Realty Finance* -- a memorandum opinion filed in 2004 -- "shall not be cited in any other action or proceeding," which includes in this federal district court action and the prior bankruptcy proceedings.  In any event, even if the court could look to *Realty Finance* on its own, the memorandum opinion did not apply the doctrine to preclude a contractual interest rate.  Rather, the Hawaii Supreme Court held only that "[o]nce the promissory notes and mortgages merged into the . . . judgment, they could not be assigned."  *Id.* (citations omitted).

decree of October 28, 1975, which terminated the period with which we are concerned[.]" *Id.*[11]

In short, this court follows Hawaii law as set forth in *Kamaole Resort* -- a binding opinion from the Hawaii Supreme Court regarding the effect of a Hawaii foreclosure decree -- rather than speculating as to which among many possible applications of a merger doctrine might apply. The merger doctrine does not preclude the twenty-four percent default interest rate applied by the Bankruptcy Court.

## V. <u>CONCLUSION</u>

For the foregoing reasons, this court AFFIRMS the Bankruptcy Court's award of interest, as set forth in (1) the February 10, 2010 Foreclosure Decree, (2) the August 3, 2010 Confirmation Order, and (3) the September 27, 2010 Memorandum of Decision on Post Judgment Interest denying GBBY's

///

///

///

///

---

[11] The opinion did not address whether that contractual rate could continue after the date of the supplemental decree, until the date of a deficiency judgment (if any).

Motion for Reconsideration.  Accordingly, the Clerk of Court is directed to close

this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 28, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*In re Metropolitan Mortgage & Securities Co., et al.*, Civ. No. 10-00623 JMS/KSC, Order
Affirming the Bankruptcy Court's Award of Interest